UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Richard Dean Wilson, Jr.,<br><br>Defendant. | Case No. 0:17-cr-00089 (SRN/LIB)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Angela M. Munoz-Kaphing, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for the Government.

Kyle David White, White Law Firm, 332 Minnesota Street, Suite W-1610, Saint Paul, Minnesota 55101, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

### I.    INTRODUCTION

This matter is before the Court for consideration of Defendant Richard Dean Wilson, Jr.'s Objection/Appeal [Doc. No. 58] from the March 12, 2018 Order of Magistrate Judge Leo I. Brisbois [Doc. No. 56] ("Order"). Defendant filed a Motion for Competency Evaluation [Doc. No. 21], which the magistrate judge granted. (Order dated May 1, 2017 [Doc. No. 27].) After an evidentiary hearing, the magistrate judge found Defendant competent to stand trial under 18 U.S.C. § 4241(d). Defendant has appealed that decision to this Court. For the reasons set forth below, the Court will overrule Defendant's Objection/Appeal and adopt the Order in its entirety.

1

## II. BACKGROUND

The magistrate judge's Order documents the relevant factual and procedural background of this case, and the Court incorporates it by reference. The Court also summarizes the most relevant facts below.

### A. Procedural Background

Defendant is a person with a mental illness or cognitive impairment that limits his ability to be self-sufficient. (Tr. [Doc. No. 51], at 44-45.) For this reason, he has been assigned a caseworker through Adult Rehabilitative Mental Health Services ("ARMHS"). (*Id.* at 12.) Defendant has also been found eligible for Supplemental Security Income ("SSI") due to the following severe impairments: social phobia, generalized anxiety disorder, and major depressive disorder. (Def.'s Ex. 2 (SSI Decision, at 3).)

Early last year, Defendant was arrested and charged with criminal sexual conduct in Minnesota State District Court. Attorney James Hughes was appointed as his counsel, and met with him for approximately an hour on March 10, 2017. (Tr., at 15, 17.) During the meeting, Hughes became concerned that Defendant was not making eye contact, spoke very softly, and fidgeted, and that it was "not clear" whether the material he was trying to discuss with Defendant "was clicking." (*Id.* at 9-10, 20.) Hughes moved for an evaluation of Defendant's mental competency to stand trial, and the Minnesota State District Court granted the motion and ordered an evaluation. (*Id.* at 10, 28.) Hughes received a referral to Dr. Gerald Henkel-Johnson, whom the court ordered to complete an evaluation of Defendant's mental capacity to stand trial, as well as his criminal responsibility. (*Id.* at 24-25, 40; Def.'s Ex. 4 (Henkel-Johnson Report).)

Around the same time, Defendant was charged in this Court with possession, production, and distribution of child pornography, as well as sexual exploitation of a child. (Compl. [Doc. No. 4]; Indictment [Doc. No. 13].)  Defendant filed a Motion for Competency Evaluation on April 24, 2017, and the magistrate judge granted it.  (Order dated May 1, 2017 [Doc. No. 27].)  The magistrate judge ordered Defendant committed to a suitable Federal Medical Center, and Defendant was transferred to the Metropolitan Correctional Center in Chicago, where he was evaluated by Dr. David Szyhowski.  (*Id.*; Gov't's Ex. 1 (Szyhowski Report).)

After Dr. Szyhowski completed his evaluation, Defendant requested an evidentiary hearing to determine competency.  Defendant also requested an additional evaluation by a neuropsychologist.  The magistrate judge granted both requests, and Dr. Norman Cohen conducted a neuropsychology evaluation.  (Order dated Oct. 13, 2017 [Doc. No. 42].)

### B.  Mental Health Evaluations

Four separate mental health evaluations were submitted for the magistrate judge's consideration in this case.  The first was completed by Drs. Lindsay Kujawa and Donald Farnsworth on March 6, 2017, shortly before Defendant was arrested, as "an evaluation of his cognitive and psychological functioning" for Defendant's application for SSI benefits. (Def.'s Ex. 1 (Kujawa/Farnsworth Report, at 1, 17).)  Though the Kujawa/Farnsworth Report was not prepared for the purposes of determining competence, some of the findings are applicable here.

The report cautioned that Defendant's "complex symptom presentation, which cuts across diagnostic category," was "the single biggest challenge" in his evaluation.  (*Id.* at 14.)

3

The Kujawa/Farnsworth Report diagnosed schizotypal personality disorder, which included a tendency to "misinterpret reality or to have distorted perceptions," "odd beliefs and magical thinking," and paranoia. (*Id.*) The Report also diagnosed social anxiety disorder, causing Defendant to assume that "others will negatively judge him and be aware of his perceived flaws." (*Id.*) The Kujawa/Farnsworth Report rejected Defendant's expressed concern that he suffered from Fetal Alcohol Syndrome ("FAS"), because his mother stated that she did not utilize drugs or alcohol during the pregnancy, and Defendant had "met all developmental milestones." (*Id.* at 15.) Among the tests that Drs. Kujawa and Farnsworth applied was a Wechsler Adult Intelligence Scale, Fourth Edition, which found that Defendant possesses average intellectual ability, and that "[o]verall, his Index scores are not indicative of any deficits in intellectual reasoning." (*Id.* at 8.)

Dr. Henkel-Johnson, a doctor of psychology, evaluated Defendant on April 10 and April 13, 2017. (Def.'s Ex. 3 (Henkel-Johnson CV); Ex. 4 (Henkel-Johnson Report, at 1).) He reviewed the Kujawa/Farnsworth Report and relevant documents in Defendant's criminal file, and administered the MacArthur Competence Assessment Tool, Criminal Adjudication. (*Id.*, Ex. 4 (Henkel-Johnson Report, at 1).)

The MacArthur tool measures competence through three measures: understanding, reasoning, and appreciation. Dr. Henkel-Johnson found Defendant to be clinically impaired in all three categories. (*Id.* at 3.) Understanding and reasoning were measured by discussion of a hypothetical crime. (Tr., at 76.) With regard to understanding, Dr. Henkel-Johnson noted that Defendant understood or partially understood the roles of the defense attorney and jury and the consequences of pleading guilty, but did not understand the roles

4

of the prosecutor or the judge and did not adequately communicate understanding of the nature of the charges discussed and the consequences of conviction. (Def.'s Ex. 4 (Henkel-Johnson Report, at 3).) As for reasoning, Dr. Henkel-Johnson found that Defendant did not demonstrate an ability to distinguish between relevant and irrelevant information or reason between legal options. (*Id.*)

Dr. Henkel-Johnson measured appreciation under the MacArthur tool by asking Defendant questions about the specifics of his case. (Tr., at 79-80.) He determined that Defendant "was not able to adequately describe an understanding of the likelihood of being treated fairly, being found guilty, or pleading guilty, or estimating the amount of punishment he may receive." (Def.'s Ex. 4 (Henkel-Johnson Report, at 4).) Dr. Henkel-Johnson also administered a Fitness Interview Test – Revised, which evaluated Defendant's understanding of various aspects of a criminal trial, and drew similar results. (*Id.*)

Dr. Henkel-Johnson concluded that Defendant "does not understand the charges and proceedings against him and has sufficient confusion and social anxiety such that he cannot adequately participate in his defense." (*Id.* at 5.) He based this conclusion upon the "impoverished answers [Defendant] gave in testing and interviewing regarding specific court-related skills, and his history of mental disorder." (*Id.* at 6.) He also echoed the diagnosis in the Kujawa/Farnsworth Report of schizotypal personality disorder. (*Id.* at 5.)

Dr. Szyhowski, a doctor of psychology, evaluated Defendant while he was in custody at the Metropolitan Correctional Center in Chicago. (Gov't's Ex. 1 (Szyhowski Report, at 1); Gov't's Ex.3 (Szyhowski CV, at 1).) Dr. Szyhowski met with Defendant five times to conduct interviews and administer psychological tests. (Tr., at 111.) He also

5

reviewed Defendant's criminal file, the reports of Drs. Kujawa, Farnsworth, and Henkel-Johnson, and spoke to Defendant's counsel and staff at the Metropolitan Correctional Center. (Gov't's Ex. 1 (Szyhowski Report, at 1-2).) Dr. Szyhowski administered a series of psychological tests, including the Validity Indicator Profile, which showed that Defendant "intended to respond correctly" and honestly to Dr. Szyhowski's questions. (*Id.* at 7.) To evaluate competency, Dr. Szyhowski administered the Evaluation of Competence to Stand Trial – Revised ("ECST-R"), a semi-structured interview. (*Id.* at 2, 7.)

Dr. Szyhowski determined that Defendant demonstrated a factual understanding of the charges against him, the roles of defense counsel and prosecutor, and the jury. (*Id.* at 7-8.) Though he initially gave an incomplete description of the role of the judge, Dr. Szyhowski noted that Defendant was able to paraphrase new information about the judge's role after it was explained to him, demonstrating "an ability to learn new information related to court processes." (*Id.* at 8; *see also* Tr., at 144, 165-69.) Defendant did not know the penalties for his charged crimes, but was aware that he could ask his attorney for more information about that. (Gov't's Ex. 1 (Szyhowski Report, at 7).)

Dr. Szyhowski also determined that Defendant demonstrated a rational understanding of criminal proceedings. Defendant was aware that his case could be resolved through a plea bargain or by going to trial, and described plea bargains and his reasons for taking them in past cases. (*Id.* at 8.) Dr. Szyhowski noted that Defendant appeared to have "a firm grasp on the concept of working with an attorney," but that his deferential personality could cause "some difficulty in advocating for himself if he is at odds with his defense attorney." (*Id.*) Dr. Szyhowski concluded that Defendant was

6

competent to stand trial, but cautioned that his "acquiescent interpersonal style . . . will cause him the greatest difficulty as he moves forward in his criminal case." (*Id.* at 9.) He therefore advised that Defendant's attorney "should routinely check with the defendant and elicit the defendant's understanding of case proceedings, opinions regarding defense strategy, and desired outcomes throughout the course of the criminal proceedings." (*Id.* at 12.)

In addition to his competency conclusions, Dr. Szyhowski diagnosed Defendant with schizoid personality disorder, which manifests as "a pervasive pattern of detachment from others and reduced range of expressed emotions," as well as other specified depressive disorder, pedophilic disorder, and alcohol use disorder. (*Id.* at 9-11.) He also stated that Defendant "did not present with any observable gross or acute neuropsychological sequela that were related to his competency related functional abilities." (*Id.* at 7.)

Dr. Cohen, a doctor of neuropsychology, spent one day examining Defendant and administering neuropsychological tests. (Def.'s Ex. 6 (Cohen Report, at 7).) He also reviewed Defendant's relevant history and the reports of Drs. Kujawa, Farnsworth, Henkel-Johnson, and Szyhowski. (*Id.* at 1-7.) Dr. Cohen identified three areas of concern regarding Defendant's cognitive ability: memory, attention, and executive functioning. (*Id.* at 19.) He noted that Defendant scored badly in retention of complex verbal information, and that he has difficulty recalling verbal information that exceeds a few sentences. (*Id.* at 9-10.) While Dr. Cohen declined to offer an opinion as to Defendant's competency to stand trial, he did state that Defendant's memory impairment "might affect his ability to participate in his own defense." (*Id.* at 10.) Dr. Cohen also noted that Defendant scored badly on most

7

measures of attention, and on several measures of executive skills, which he defined as "problem solving involving logical, timely, goal directed reasoning." (*Id.* at 10-11.) With regard to executive skills, Dr. Cohen found that "when [Defendant] is given more structure and organization to help him solve problems, he does far better." (*Id.* at 16.)

Dr. Cohen referred to several "possible contributors" to Defendant's impaired cognitive functioning, apart from "inborn mental illness/cognitive problems." (*Id.* at 2-3, 18.) Dr. Cohen noted that Defendant's mother recently admitted to using alcohol and drugs while pregnant with Defendant, and that FAS could play a role in Defendant's cognitive functioning. (*Id.* at 2, 18.) Additionally, Dr. Cohen stated that Defendant's long history of intermittent alcohol abuse and the effects of a brain injury in a 1995 car crash may have contributed to his cognitive impairments. (*Id.* at 2-3.)

Dr. Cohen disagreed with Dr. Szyhowski's diagnosis of schizoid personality disorder, and instead echoed the opinions of Drs. Kujawa, Farnsworth, and Henkel-Johnson, diagnosing schizotypal personality disorder. (*Id.* at 7, 14-15.) He described schizotypal personal disorder as involving "significant thinking problems including ideas of reference (such as grandiosity), odd beliefs or magical thinking, unusual perceptual experiences, odd thinking and speech, paranoid ideation and behavior that appears odd, eccentric or peculiar." (*Id.* at 7.) Schizoid personality disorder, on the other hand, lacks these "thinking problems" and is more characterized by "emotional coldness, detachment, and/or flattened affect." (*Id.*) Dr. Cohen noted that Defendant told him he had minimized his symptoms to Dr. Szyhowski in an effort to "present himself as well as possible," and considered it possible

8

that this was why Dr. Szyhowski diagnosed schizoid personality disorder, that failed to account for Defendant's paranoid ideation. (*Id.* at 7-8.)

Ultimately, Dr. Cohen determined that "it is hard for [Defendant] to pay attention, remember, and logically solve problems without high levels of structure from others." (*Id.* at 17.) He opined that Defendant's odd thinking patterns and limited cognitive capacities "make it difficult for him to understand and respond to the world appropriately." (*Id.*) Additionally, he stated that Defendant "at times will make decisions not in his own self-interest that are seen by others as odd or unusual." (*Id.* at 18.)

### C. Competency Hearing and Determination

#### 1. The Hearing

Magistrate Judge Brisbois held an evidentiary hearing on January 9, 2018. The parties submitted into evidence the four medical evaluations described above. (Tr., at 5-6.) Defendant called two witnesses: James Hughes, Defendant's appointed defense counsel from the state criminal case, and Dr. Henkel-Johnson. (*Id.* at 7-101.) Hughes testified that he sought an evaluation of Defendant's competency to stand trial after meeting with him in the jail, because he was concerned that Defendant had not understood the information that Hughes was trying to explain to him. (*Id.* at 20.) Hughes confirmed that he spent approximately 15-20 minutes talking to Defendant about "the charges, his rights, and what would happen" at an upcoming hearing when he met with Defendant on March 10, 2017. (*Id.* at 22.)

Dr. Henkel-Johnson testified that Defendant's cognitive impairments are consistent with the symptoms of brain trauma, possibly from fetal alcohol exposure, his brain injury in

9

a 1995 car crash, or his history of chemical abuse.  (*Id.* at 49-50.)  He criticized Dr. Szyhowski's use of a structured interview to assess competency instead of an "objectively scored" test like the one Dr. Henkel-Johnson used.  (*Id.* at 55.)  He strongly encouraged the magistrate judge to place the greatest weight on Dr. Cohen's neuropsychological evaluation when determining competency, because of Dr. Cohen's expertise in neuropsychological damage and his extensive testing.  (*Id.* at 96.)

The Government called Dr. Szyhowski to testify.  Dr. Szyhowski stated that his evaluation of Defendant's response style, finding that Defendant tended to answer questions openly and intended to respond correctly, was important because "there is an unusually higher rate . . . of feigned presentation when people are pursuant to any kind of court litigation."  (*Id.* at 123.)  He also testified that the ECST-R test he used is patterned from the legal standard for competence, and that he prefers that test to one that uses objective scoring, because "raw cut-off scores" limit the ability to account for the unique characteristics of a defendant and/or the charged crimes.  (*Id.* at 126, 143-44.)

Dr. Szyhowski testified that he did not see the need to conduct neuropsychological testing in his evaluation, for a two reasons.  First, he was concerned that applying the same tests that Drs. Kujawa and Farnsworth applied so soon after their evaluation would cause a re-test effect that could skew the results.  (*Id.* at 136-37.)  Second, Dr. Szyhowski did not think that Defendant's possible cognitive impairment from fetal alcohol exposure, brain injury, or long-term substance abuse warranted neuropsychological testing, because any effects from those events would tend to be stable over a long period of time, and because Defendant's alcohol abuse has been intermittent in recent years.  (*Id.* at 137-39.)  Finally,

10

Dr. Szyhowski expressed concern that Dr. Cohen used an outdated memory test in his neuropsychological evaluation of Defendant, and that this could explain the disparate results in his report and the Kujawa/Farnsworth Report on the question of whether Defendant's memory was impaired. (*Id.* at 139-40.)

### 2. Magistrate Judge Brisbois' Order

Magistrate Judge Brisbois issued his Order on March 12, 2018, finding Defendant competent to stand trial. (Order, at 21.) The magistrate judge weighed the different reports, noting that the Kujawa/Farnsworth Report was not prepared in the context of a competency determination and that the Cohen Report described the results of supplemental testing and did not directly opine on competency. (*Id.* at 17-18.) The magistrate judge also noted that Dr. Cohen used an outdated version of his memory test, undermining the credibility of his conclusions about Defendant's memory impairment. (*Id.*)

Further, the magistrate judge gave less weight to Dr. Henkel-Johnson's report because it relied significantly upon Defendant's inability to state the nature of the charges against him and the penalties he faces, even though Defendant had spent no more than 20 minutes discussing these issues with his attorney Hughes before the evaluation. The magistrate judge stated, "the inherent possession of detailed knowledge or understanding about the criminal charges one is facing and the possible sentencing penalties upon conviction thereof is not necessarily indicative of one's competency to stand trial. It is the role of the attorney to assist a criminal defendant in gaining such knowledge." (*Id.* at 19.) The magistrate judge credited Dr. Szyhowski's "subsequent and more extensive clinical

11

interviews and testing of Defendant" and his conclusion that Defendant "can understand and retain new information provided to him" about the criminal proceedings. (*Id.*)

Finally, the magistrate judge addressed Defendant's "heavy emphasis on his history of mental illness, his multiple diagnoses thereof, and the resulting difficulties therefrom." (*Id.* at 20.)  Because not every manifestation of mental illness demonstrates incompetence, the magistrate judge noted, the "critical question . . . is not which precise diagnosis is most accurate," but "whether the mental illness or its symptoms affects Defendant's competency." (*Id.*)  Further, the magistrate judge rejected Defendant's arguments based upon his alleged fetal alcohol exposure and possible traumatic brain injury, finding "there has been no evidence presented to the Court showing that Defendant actually suffers from either of these conditions." (*Id.* at 13 n.3.)  Magistrate Judge Brisbois, after hearing the testimony and reviewing the record, determined that Defendant is competent to stand trial.

Defendant filed his Objection/Appeal, asking this Court to reverse Magistrate Judge Brisbois' Order and find that Defendant is not competent to stand trial. (Objection/Appeal.) Defendant argues that the magistrate judge improperly ignored Dr. Cohen's neuropsychological findings and Defendant's cognitive impairments, and that the magistrate judge gave too much weight to Dr. Szyhowski's report. (*Id.* at 4-9.)

### III.  DISCUSSION

#### A. Standard of Review

The Court must first determine which standard to apply to the magistrate judge's decision.  The statute permitting delegation to magistrate judges specifies:

> [A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, or judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A). Matters not meeting the description in § 636(b)(1)(A) may be referred to the magistrate judge for a Report and Recommendation, which is subject to de novo review upon objection. *Id.* § 636(b)(1)(B)-(C). Though the statute itself does not use this language, courts have referred to these two categories of pretrial matters as "dispositive" and "nondispositive." *See, e.g.*, *Gomez v. United States*, 490 U.S. 858, 873-74 (1989). If the magistrate judge's competency decision is a ruling on a nondispositive pretrial matter under § 636(b)(1)(A), then the Court reviews it for clear error or mistake of law.

At least one circuit court of appeals, the Ninth Circuit, has treated competency decisions by magistrate judges as dispositive matters subject to de novo review by the district court. *See United States v. Rivera-Guerrero*, 377 F.3d 1064, 1067-69 (9th Cir. 2004). The Eighth Circuit has not ruled on this issue. *See United States v. Millard-Grasshorn*, 603 F.3d 492, 496 (8th Cir. 2010); *United States v. Johnson*, No. 06-cr-1037, 2007 WL 1597641, at *1 (N.D. Iowa June 1, 2007). The Court need not decide whether the competency determination is dispositive or nondispositive, however, because in either case the result of this review will be the same. Even applying the higher standard of de novo

review, the Court agrees with the magistrate judge that Defendant is competent to stand trial.

### B. Applicable Law

"The conviction of an incompetent person is a violation of due process." *United States v. Rickert*, 685 F.3d 760, 765 (8th Cir. 2012). A criminal defendant is not competent to stand trial if he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). "A defendant is competent if he 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.'" *Rickert*, 685 F.3d at 765 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam)). If the Court finds "by a preponderance of the evidence" that a defendant is not competent, the defendant will be committed to a treatment facility for a determination whether "there is a substantial probability" that the defendant could become competent in the future. 18 U.S.C. § 4241(d).

The burden rests with the defendant to demonstrate that he is not competent to stand trial, *United States v. Mueller*, 661 F.3d 338, 352 (8th Cir. 2011), and determining whether a defendant is competent to stand trial is committed to the discretion of the district court, *United States v. Ghane*, 490 F.3d 1036, 1040 (8th Cir. 2007). "In order to make a determination of competency, the district court should consider the behavior, demeanor, and prior psychiatric history of the defendant." *United States v. Turner*, 644 F.3d 713, 721 (8th

Cir. 2011). "A district court may rely on one of two competing competency opinions given by qualified experts." *Ghane*, 490 F.3d at 1040.

### C. Analysis

Defendant argues that the magistrate judge erred by dismissing Defendant's purported cognitive impairment from FAS and traumatic brain injury as speculative. (Objection/Appeal, at 2.) But even though Defendant states that the purpose of Dr. Cohen's neuropsychological evaluation was, "[s]pecifically, to determine the effects of *in utero* brain damage before birth and traumatic brain injury in 1995," Dr. Cohen's report does little to clarify this question. (*Id.*) Dr. Cohen states that Defendant's "cognitive status is likely the combination of inborn mental illness/cognitive problems, the influences on his brain of *in utero* exposure to alcohol and marijuana, the brain injury he experienced in 1995, and his own long history of abuse of both alcohol and marijuana," but beyond this vague statement, Dr. Cohen does not make any conclusions about Defendant's alleged FAS or traumatic brain injury. (Def.'s Ex. 6 (Cohen Report, at 18).) The Court agrees with the magistrate judge that Defendant has presented little concrete evidence to support the argument that he is severely impaired because of FAS and traumatic brain injury.

More generally, Defendant argues that the magistrate judge ignored the results of Dr. Cohen's evaluation. (Objection/Appeal, at 1-3, 9.) But the magistrate judge determined that "the substance of Dr. Cohen's comments and concerns as reflected in his Report do not rise to the level required to demonstrate that Defendant is incompetent to stand trial." (Order, at 17.) The Court agrees that Defendant cannot meet his burden by relying on Dr. Cohen's report. As Dr. Szyhowski pointed out, Dr. Cohen administered an outdated version

15

of the Wechsler Memory Scale.  (Tr., at 139-40.)  Additionally, both Drs. Kujawa and Farnsworth and Dr. Cohen administered the Wechsler Adult Intelligence Scale, Fourth Edition, to evaluate Defendant's cognitive functioning.  (Def.'s Ex. 1 (Kujawa/Farnsworth Report, at 2); Def.'s Ex. 6 (Cohen Report, at 7).)  Dr. Szyhowski noted in his testimony that the publishers of that scale do not recommend re-administering that test within 12 months of the initial administration.  (Tr., at 136-37.)  But Dr. Cohen administered the Wechsler scale in October or November of 2017, less than 12 months after the Kujawa/Farnsworth evaluation in February 2017.  (Def.'s Ex. 1 (Kujawa/Farnsworth Report, at 1); Def.'s Ex. 6 (Cohen Report, at 1).)  Thus, the possibility of re-test effects further undermines the Cohen Report's impact.  (Tr., at 136-37.)

Defendant also argues that the magistrate judge should have given less weight to Dr. Szyhowski's report and testimony, because he is not licensed in the State of Minnesota, and stated in his testimony that he was not familiar with certain Minnesota programs and statutes.  (Objection/Appeal, at 3-7.)  But Defendant admits that Dr. Szyhowski is medically licensed in Illinois, and that his lack of a Minnesota license does not bar him from testifying about his evaluation of Defendant.  (*Id.* at 6.)  And Dr. Szyhowski testified that he is familiar with the law governing competency determinations in criminal proceedings.  (Tr., at 104-05.)

Defendant argues that Dr. Szyhowski's report is flawed because he was not aware of, or did not take into account, Defendant's qualification for an ARMHS caseworker, and his eligibility for SSI.  (Objection/Appeal, at 4-7.)  Defendant also alleges that Dr. Szyhowski "relied on virtually no collateral contacts and failed to send out signed releases for

16

additional medical information." (*Id.* at 3.) The Court does not consider any of these alleges deficiencies to undermine Dr. Szyhowski's opinion. First, Dr. Szyhowski did review the Kujawa/Farnsworth Report, which was the basis for Defendant's application for SSI. (Gov't's Ex. 1 (Szyhowski Report, at 1-2).) Additionally, Dr. Szyhowski spoke to people who had observed Defendant's behavior, specifically Defendant's attorney and several staff at the Metropolitan Correctional Center where Defendant was housed. (*Id.*) Further, these sources of information are less essential to the competency determination than the clinical test that Dr. Szyhowski applied, which he testified was patterned on the legal standard for competency to stand trial. (Tr., at 126.) While Defendant's eligibility for an ARMHS caseworker and SSI benefits tend to prove that he has a mental illness, the magistrate judge correctly noted that mental illness alone does not establish incompetency. (Order, at 20.) "Importantly, not every manifestation of mental illness demonstrates incompetence." *United States v. Casteel*, 717 F.3d 635, 641 (8th Cir. 2013) (citation and internal quotations omitted).

Dr. Szyhowski's report and testimony support a finding of competency here. After meeting with Defendant five times and administering several tests, Dr. Szyhowski concluded that Defendant demonstrated sound factual and rational understanding of the criminal proceedings, and had a "firm grasp on the concept of working cooperatively with an attorney." (Gov't's Ex. 1 (Szyhowski Report, at 8).) While unfamiliar with some nuances of court proceedings, Defendant demonstrated "the ability to benefit from education" by listening to Dr. Szyhowski's explanation of the role of the judge and correctly paraphrasing that information. (*Id.* at 8-9.) Dr. Szyhowski acknowledged Defendant's

17

"acquiescent interpersonal style," and the possibility that he would be highly deferential to his attorney. (*Id.* at 9.) But he gave specific guidance to ensure that Defendant understands the proceedings and protect his self-advocacy. (*Id.*) And although Dr. Cohen report raised the possibility that Defendant had underreported his symptoms to Dr. Szyhowski, Dr. Szyhowski included in his evaluation testing designed to establish the reliability of Defendant's answers, and determined that Defendant had answered his questions to the best of his ability. (*Id.* at 6; Def.'s Ex. 6 (Cohen Report, at 7-8).)

Having reviewed the reports and testimony, the Court agrees with Magistrate Judge Brisbois that Defendant has not met his burden to show that he is incompetent to stand trial. And although Defendant suggests that the Court should order an additional medical evaluation of Defendant in light of the conflicting opinions of medical experts in this case, the Court finds that an additional evaluation is unwarranted in light of the considerable evidence that has been presented and considered in this case.

### IV.    ORDER

The Court **OVERRULES** Wilson's Objection/Appeal [Doc. No. 58] and **ADOPTS** the Magistrate Judge's March 12, 2018 Order [Doc. No. 56] finding Defendant Richard Dean Wilson, Jr., competent to stand trial.


Dated:     May 9, 2018                           **s/Susan Richard Nelson**
                                                 SUSAN RICHARD NELSON
                                                 United States District Court Judge